\UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RAMON T.,[1]

                            Plaintiff,                  DECISION AND ORDER

-vs-

                                             1:20-CV-0307 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Nov. 4, 2020, ECF No. 12; Def.'s Mot., Dec. 14, 2020, ECF No. 13. Plaintiff makes three arguments to support his position that the Commissioner's denial of his application for DIB and SSI benefits should be reversed and remanded for further proceedings: (1) the Administrative Law Judge ("ALJ") failed in his duty to develop the record, resulting in findings that are conclusory and not supported by substantial evidence; (2) the Commissioner's Appeals Council failed to account for new and material evidence; and, (3) the ALJ conducted an improper credibility analysis. Pl. Mem. of Law, 2, Nov. 4, 2020, ECF No. 12-1. The Commissioner disputes Plaintiff's

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

contentions.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, the Commissioner's motion [ECF No. 13] is granted, and the Clerk of Court is respectfully directed to close this case.

LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other

work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff protectively filed his DIB and SSI applications on October 12, 2016, alleging a disability onset date of November 15, 2015. Transcript ("Tr."), 377–89, Sept. 10, 2020, ECF No. 10. In his applications, Plaintiff alleged that his ability to work was limited by cervical radiculopathy, lumbar radiculopathy, insomnia, depression, and anxiety. Tr. 416. On December 20, 2016, the Commissioner determined that Plaintiff's condition was not severe enough to keep him from working, and therefore found that he was not disabled and did not qualify for either DIB or SSI benefits. Tr. 300, 304. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 308.

Plaintiff's request was approved, and the hearing was held via videoconference on October 22, 2018. Tr. 54. Plaintiff appeared with counsel, and an impartial vocational expert ("VE") joined the hearing by phone. Tr. 56. With respect to his work history, Plaintiff testified that he drove concrete mixers and dump trucks from 2003 to 2005, was found to be disabled from 2007 to 2013, worked in the neighborhood on occasional landscaping and concrete jobs between 2009 and 2013, attended college for a semester in 2010,

worked as a parking attendant through the "Ticket to Work" program[2] in 2012, and worked at a hardware store in 2015. Tr. 58–61. Plaintiff stated that he does not think he can work presently because:

> . . . the pain it's just so much – I get constant flare-ups from inflammation. And I have late nights – I sleep and it takes me two or three hours to fall asleep. As I'm sleeping, I'm sleeping in pain and constantly tossing and turning, trying to find – I have rounded shoulders. My shoulders always lean forward. It's hard to keep my shoulders relaxed, so I wake up in pain. And my flare-ups just come at any moment. Could be a stressful moment or just gradually. I'll just get flare-ups.

Tr. 66. He further stated that he has herniations in "pretty much all of [the cervical vertebrae in] my neck area" (Tr. 73), osteoarthritis that prevents him from using much of the left side of his body (Tr. 73, 75), and "restless leg syndrome" (Tr. 77).

In addition, Plaintiff testified that he spends his whole day at home, going from bed to couch (Tr. 62), largely because he "just fear[s] a lot of things . . . maybe injuring myself somehow, some way . . . . I just feel like I don't fit in with society" (Tr. 77). In the evenings he tends to "step out for about a half hour to my local store and try to socialize with people there," but otherwise has "no life." Tr. 62. Plaintiff keeps his home clean "at all times" (Tr. 62) and is able to dress himself (Tr. 66), but he doesn't do much laundry because he has nothing to wash (Tr. 63), is able to cook only with the microwave (Tr. 63, 73), and doesn't shower much or take care of his hygiene because he hasn't been able to get a shower seat (Tr. 65). Plaintiff doesn't own a vehicle, takes Medicaid transportation to his medical appointments, rides with neighbors for the little shopping that he does do, and walks to

---

[2] Under the Commissioner's "Ticket to Work" program, "a disabled beneficiary may use a ticket to work and self-sufficiency issued by the Commissioner in accordance with this section to obtain employment services, vocational rehabilitation services, or other support services from an employment network which is of the beneficiary's choice and which is willing to provide such services to such beneficiary." 42 U.S.C. § 1320b-19(a).

the corner store for everything else. Tr. 63–64. Plaintiff has not been able to attend church with his daughter for a year and a half because sitting in the pews bothers his lower back and neck, and because his daughter stopped coming to pick him up. Tr. 79–80.

On November 30, 2018, the ALJ denied Plaintiff's claim for DIB and SSI benefits. Tr. 48. In his decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2019. Tr. 40. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 15, 2015, the alleged onset date. Tr. 41. At step two, the ALJ determined that Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease, left shoulder dysfunction, and chronic pain. Tr. 41. The ALJ also assessed Plaintiff's alleged mental impairments – an adjustment disorder with features of anxiety and depression – utilizing the "special technique" required by 20 C.F.R. § 404.1520a and § 416.920a.[3] Tr. 41. In so doing, the ALJ determined that Plaintiff's alleged mental impairments caused no more than mild limitations in any of the four psychological areas of functioning evaluated through the technique: understanding, remembering, or applying information; interacting with others; concentrating, persisting,

---

[3] The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

or maintaining pace; and adapting or managing himself. Tr. 41–42. Therefore, the ALJ found that Plaintiff's mental impairments are non-severe. Tr. 41.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 42. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[4] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that he "can do frequent but not constant handling and reaching, but only occasional overhead reaching." Tr. 42.

Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform his past relevant work as a hardware salesperson, parking lot attendant, truck driver, landscape laborer, or concrete finisher. Tr. 46. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a marker or a lab sample carrier. Tr. 47. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB or SSI. Tr. 48.

On January 29, 2019, Plaintiff asked the Commissioner's Appeals Council to review the ALJ's decision, and submitted a large quantity of additional evidence in support. Tr. 6. In its decision denying Plaintiff's request to review, the Appeals Council ruled as follows regarding the additional evidence Plaintiff had submitted:

> You submitted (i) medical records from Dent Neurologic Institute, dated October 18, 2016 to February 2, 2017 (8 pages); (ii) a consultative exam

---

[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

report from John Schwab, D.O., dated December 2, 2016 (7 pages); (iii) a consultative exam report from Susan Santarpia, Ph.D., dated December 2, 2016 (4 pages); (iv) treatment notes from ECMC (page 2), dated February 2, 2017 (1 page); and (v) progress notes from Gary Wang, M.D., dated February 27, 2017 to March 20, 2017 (6 pages). This evidence is not new because it is a copy of Exhibits C4F, C6F, C7F, C9F (page 1), C13F and Cl4F. We did not exhibit this evidence.

You also submitted (i) a letter from Annette Cruz, Administrative Assistant, dated July 24, 2006 (3 pages); (ii) medical records from General Physician PC/Kaleida Health, dated December 28, 2018 to January 2, 2019 (7 pages); (iii) treatment notes from ECMC (pages 1 and 3-5), dated February 2, 2017 (4 pages); (iv) treatment notes from ECMC, dated August 28, 2013 to December 18, 2018 (32 pages); (v) treatment notes from ECMC, dated July 3, 2017 to December 11, 2018 (36 pages); and (vi) medical records from Kingsbrook Jewish Medical Center and Dr. Mathew Lefkowitz, dated April 22, 2003 to March 21, 2007 (16 pages);. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

You submitted (i) emergency room reports from Mercy Hospital of Buffalo, dated October 24, 2019 to November 25, 2019 (11 pages); (ii) an MRI report from Western New York MRI, dated October 28, 2019 (4 pages); (iii) treatment notes from General Physician PC and ECMC, dated February 4, 2019 to September 18, 2019 (55 pages); (iv) treatment notes from Buffalo Neurosurgery Group and Dent Neurologic Institute, dated October 15, 2019 to December 25, 2019 (15 pages); and (v) a status update report from BestSelf Behavioral Health, dated July 29, 2019 (4 pages). The Administrative Law Judge decided your case through November 30, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 30, 2018.

Tr. 2. The ALJ's decision thus became the "final decision" of the Commissioner.

DISCUSSION

As noted above, Plaintiff makes three arguments in support of his position that the Commissioner's denial of her application for DIB and SSI benefits should be reversed and remanded for further proceedings: (1) the Administrative Law Judge ("ALJ") failed in his duty to develop the record, resulting in findings that are conclusory and not supported

by substantial evidence; (2) the Commissioner's Appeals Council failed to account for new and material evidence; and, (3) the ALJ conducted an improper credibility analysis. Pl. Mem. of Law at 2.

Judicial Review of the Commissioner's Final Decision

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

The ALJ's Step Three and RFC Determinations

The first issue that Plaintiff presents to the Court for review is actually two separate arguments: (1) that the ALJ's step three determination was conclusory, and (2) that the ALJ failed in his duty to develop the record, and therefore rendered an RFC determination not supported by substantial evidence. Pl. Mem. of Law at 13–24. The Court will address each of these arguments in turn.

*The ALJ's Step Three Determination*

The ALJ's entire discussion at step three of the five-step sequential evaluation process was as follows:

> In regard to claimant's cervical and lumbar degenerative disc disease and his shoulder dysfunction, while they are categorized under the 1.00 Musculoskeletal Body System Listing, they do not meet or medically equal the sub-listings of 1.02 Major Dysfunction of a Joint, 1.04 Disorders of the Spine, 1.05 Amputation, 1.06 Fracture of the Femur, Tibia, Pelvis, or One or More of the Tarsal Bones, 1.07 Fracture of an Upper Extremity, or 1.08 Soft Tissue Injury (such as burns).

Tr. 42. Plaintiff maintains that the ALJ failed to adequately set forth the reasons for his determination at this step, and thereby precluded meaningful judicial review. Pl. Mem. of Law at 16 (citing *Larkins v. Barnhart*, 87 F. App'x 193, 194 (2d Cir. 2004)). This argument is without merit.

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (internal quotation marks omitted; emphasis in original). With respect to the ALJ's determination at this step, "the absence of an express rationale does not prevent [a reviewing court] from upholding the ALJ's

determination regarding [a claimant]'s claimed listed impairments, [as long as] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam)).

Here, although the ALJ did not communicate the rationale for his determination at step three, his discussion of his RFC determination makes that rationale clear. In explaining his RFC determination, the ALJ wrote that "there is nothing in the file to indicate that the claimant has physical limitations other than not being able to lift heavy weights, especially above his left shoulder." Tr. 44. The ALJ also noted that Plaintiff had supported his application for benefits with only "a modest amount of records" to demonstrate his disability (Tr. 44), that the consultative medical examiner had concluded that Plaintiff had only a "moderate to marked restriction in lifting heavy objects" (Tr. 43), that there was "no opinion in the file stating that [Plaintiff] is physically unable to work" (Tr. 44), and that Plaintiff's testimony indicated that he lives alone and is self-sufficient (Tr. 44).

Further, a comprehensive review of Plaintiff's medical records indicates that the ALJ's determination at step three was supported by substantial evidence. As noted above, the consultative medical examiner conducted a full physical exam of Plaintiff and concluded that Plaintiff's only restriction was in lifting heavy objects and raising them over shoulder height. Tr. 552. The consultative examiner noted in his report that x-rays demonstrated there was no significant bony abnormality with respect to the cervical spine, and degenerative disc disease of the lumbar spine. Tr. 552. This reading was consistent with another set of nearly contemporaneous x-rays taken at the Erie County Medical Center ("ECMC"), which showed only mild spinal canal narrowing and mild to moderate

bilateral neural foraminal narrowing of the cervical spine, and severe narrowing of the right neural foramen of the lumbar spine. Tr. 562. The consultative examiner's report was also consistent with multiple treatment records showing that Plaintiff walked with a normal gait (Tr. 503), had "normal" musculo-skeletal strength (Tr. 523), and reported aerobic exercise sessions of approximately 90 minutes six to seven times a week (Tr. 503, 507, 532, 589). *See, e.g., Trepanier v. Comm'r of Soc. Sec. Admin*., 752 F. App'x 75, 78 (2d Cir. 2018) (finding the ALJ's conclusion supported by "substantial evidence" where it was consistent with the consultative examiner's opinion and other medical evidence in the record).

Plaintiff claims that the consultative examiner's opinion is "stale" because it does not consider medical records from 2017 that found Plaintiff's left leg to be two inches shorter than his right (Tr. 611) and that he needed to use an "assistive device" due to an antalgic gait (Tr. 599), and therefore that the opinion does not constitute "substantial evidence." Pl. Mem. of Law at 20. However, Plaintiff's argument fails because it does not incorporate the full breadth of the medical evidence, and it does not recognize the Commissioner's role in resolving conflicting evidence in the record. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). For instance, the same doctor who found Plaintiff's left leg to be two inches shorter than his right, nevertheless noted that Plaintiff's gait was "normal" and that the recent MRI of his spine was "essentially normal." Tr. 611–12.

*The ALJ's Duty to Develop the Record and His RFC Determination*

Plaintiff also maintains that the ALJ failed in his duty to develop the record because there is no evidence that he sought a medical opinion from any of Plaintiff's treating

sources. Pl. Mem. of Law at 22. As a result of this failure, Plaintiff argues that the ALJ's RFC finding that Plaintiff is capable of light work was not based on substantial evidence. Pl. Mem. of Law at 23. This argument is also without merit.

It is a well-established rule in the Second Circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009). Indeed, pursuant to 20 C.F.R. § 404.1512(b) and § 416.912(b)(1), the ALJ is responsible for developing a claimant's complete medical history for at least the twelve months preceding the month in which the claimant filed his application, and "make every reasonable effort" to help Plaintiff get medical evidence from his medical sources. As Plaintiff points out, this duty is heightened when – as in this case – a claimant alleges a mental illness. Pl. Mem. of Law at 23 (citing *Stack v. Comm'r of Soc. Sec.*, 2020 WL 5651601, *3 (W.D.N.Y. Sept. 23, 2020)). Nevertheless, the ALJ is not required to develop the record any further when the evidence already presented is "adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

Here, Plaintiff points to the ALJ's reliance on the consultative medical examiner's opinion, as well as later medical records that he attempted to submit through the Appeals Council, as evidence of an "obvious gap" in the record that the ALJ had a duty to close. Upon a review of the record, however, the Court concludes that the ALJ properly gathered and analyzed the evidence necessary to form a determination as to Plaintiff's disability. As indicated above, Plaintiff protectively filed his DIB and SSI applications on October 12,

12

2016, alleging a disability onset date of November 15, 2015. The record in front of the ALJ contained (1) Plaintiff's treatment records from emergency room visits in 2013, between April 2015 and June 2015, January 2016 ,and between January 2017 and April 2018; (2) mental health treatment records from 2014 and 2015 at Horizons Corporation, and in 2016 from Mid-Erie Counseling; (3) hospital records for his neck and back pain from 2015 to early 2017; (4) an electromyography report from October 2016; (5) consultative examinations from medical doctor John Schwab, and psychiatrist Susan Santarpia; (6) office treatment records from both the orthopedics practice and neurosurgery practice at ECMC from 2016 and 2017; (7) treatment records from his evaluation and treatment by Dr. Gary Wang in 2017; and (8) treatment records from Dent Neurologic Institute from 2016 to 2017. In all, the record contained over 200 pages of plaintiff's medical history from a variety of treatment providers, all centered around Plaintiff's chief physical complaints of neck and back pain, as well as his mental health complaints of depression, "stress," and anxiety. Furthermore, the record does not indicate that Plaintiff requested that the ALJ solicit the medical of opinion of his treating physicians. Accordingly, the Court finds that the records before the ALJ were adequate for making a determination as to Plaintiff's disability, and – for the reasons discussed above – that his RFC determination was based on substantial evidence.

<u>The Appeals Council</u>

Next, the Court turns to Plaintiff's argument regarding the Appeals Council. As noted above, the Appeals Council declined to consider the new evidence that Plaintiff submitted after the ALJ's decision denying him benefits. Tr. 2. In so doing, the Appeals Council divided the new evidence into three main categories, and declined to exhibit the

evidence for a different reason for each category. For the first category, the Appeals Council observed that the evidence submitted was merely a duplicate of evidence already in the record. For the second category, the Appeals Council declined because the evidence did not show a reasonable probability that it would change the outcome of the decision. And for the third category, the Appeals Council declined because it found that the evidence did not relate to the period at issue.

Plaintiff does not maintain that the Appeals Council erred by declining to exhibit the duplicative evidence. However, Plaintiff does maintain that the Appeals Council erred by declining to exhibit the other new evidence because he believes "[t]he new and material evidence at issue contains medical opinion and evidence related to long-standing chronic and degenerative conditions, and chronic pain with radicular symptoms that contradicts the RFC findings." Pl. Mem. of Law at 24. The Court disagrees.

*Evidence Had No Reasonable Probability of Changing the Outcome*

The Appeals Council found that the following new evidence submitted by Plaintiff did not have a reasonable probability of changing the Commissioner's decision: a 2006 letter from the Administrative Assistant at Plaintiff's back surgeon, as well as medical records from Kingsbrook Jewish Medical Center and Dr. Mathew Lefkowitz related to that 2007 back surgery (Tr. 258–72); medical records from three of Plaintiff's visits to Kaleida Health and General Physician PC, respectively, between December 2018 and February 2019 to get pain relief for his low back pain (Tr. 110, 168–170); treatment notes from Plaintiff's visit to ECMC's orthopedics practice in 2017 for chronic neck pain (Tr. 219–22); and treatment notes from Plaintiff's multiple visits to ECMC and Kaleida Health between August 2013 and December 2018 (Tr. 223–53).

14

The Court has previously summarized the duties of the Appeals Council, and the

Court's role in reviewing a decision by the Appeals Council:

> Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.

> *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (citation omitted). On the other hand, the Appeals Council does not err by declining to review an ALJ's decision, and is not required to give a detailed explanation for its decision, when the newly-submitted evidence does not dramatically alter the weight of the evidence. *See*, *Bushey v. Colvin*, 8:11-CV-00031-RFT (N.D.N.Y.), *affirmed*, 552 F. App'x 97, 98 (2d Cir. Jan. 29, 2014) ("We do not believe that the Appeals Council erred by refusing to review the ALJ's decision in light of the new evidence that Bushey submitted to that body. The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").

*Davis v. Colvin*, No. 15-CV-6082 CJS, 2016 WL 385183, at *6 (W.D.N.Y. Feb. 2, 2016).

Accordingly, the issue before the Court is whether the new evidence cited above

"altered the weight of the evidence so dramatically as to require the Appeals Council to

take the case." *Bushey*, 552 F. App'x at 98. The Court finds that it did not. The evidence

regarding Plaintiff's back injury, and consequent surgery in 2007, was noted in most of

the medical records before the ALJ at the time of his decision, and the lasting effects of

that injury and surgery were well-documented. Additionally, the evidence from Plaintiff's

pain management appointments, and from his multiple visits to ECMC and Kaleida Health

are generally consistent with the evidence already in the record and with the ALJ's RFC

determination. In fact, three of the new records that Plaintiff submits are assessments by

Dr. Jeffery Grace (Tr. 227), Dr. Nschala Dhanskula (Tr. 228–29), and a nurse practitioner (Tr. 230–31) that arguably support the ALJ's determination that Plaintiff's mental health impairments are non-severe, and that he is capable of light work with some physical exertional limitations. Consequently, the Court finds that the new evidence that Plaintiff presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.

*Evidence Did Not Relate to the Period at Issue*

The Appeals Council found that the following new evidence submitted by Plaintiff did not relate to the period at issue: treatment records from emergency room visits at Mercy Hospital of Buffalo in October and November 2019 (Tr. 98–107), an MRI report from October 2019 (Tr. 95–97), treatment notes from General Physician PC and ECMC between February and September 2019 (Tr. 110–63), treatment notes from the Buffalo Neurosurgery Group and Dent Neurologic Institute between October 2019 and December 2019 (Tr. 9–22), and a "Status Update Report" from BestSelf Behavioral Health from July 2019 (Tr. 24–26).

20 C.F.R. § 404.970(a)(5) and § 416.1470(a)(5) permit the Appeals Council to review an ALJ's hearing decision if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *See, e.g., Lesterhuis*, 805 F.3d at 87. Because the new evidence submitted by Plaintiff to the Appeals Council did not exist at the time of the ALJ's hearing, there is no question that the evidence is "new." *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). The question, then, is whether the new evidence is "material."

With respect to materiality, the Second Circuit has stated that "[n]ew evidence is 'material' if it is both (1) relevant to the claimant's condition during the time period for which benefits were denied, and (2) probative . . . ." *Pollard*, 377 F.3d at 193 (quoting *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988) (internal quotation marks omitted)). To be sure, newly created medical evidence may provide information about a claimant's condition at an earlier date. *See, e.g., Lisa v. Secretary of Dep't of Health and Human Serv.*, 940 F.2d 40, 44 (2d Cir. 1991). Nevertheless, the Court has reviewed the records in the present case and cannot say that the Appeals Council erred in concluding that the new records referred to Plaintiff's condition at some point after the ALJ issued his decision on November 30, 2018. *See, e.g., Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) (finding the Appeals Council did not err when it declined to consider new evidence that described a claimant's condition on the date that the records were prepared, not on an earlier date). Although there appears to be a difference of opinion between the Buffalo Neurosurgery Group and the Dent Neurologic Institute about treatment options, records from both groups are focused Plaintiff's condition in 2019 and beyond. *Compare* Tr. 9 (dealing in November 2019 with "symptoms [that] have progressively gotten worse from last January to this September"), and Tr. 13 (observing "new enhancing soft tissue along the anterior margin of the L5-S1 disc space . . . [and] also new fluid . . . ").

Accordingly, the Court finds no error in the Appeals Council's decision not to review the ALJ's decision in Plaintiff's case.

The ALJ's Evaluation of Plaintiff's Subjective Complaints

Lastly, Plaintiff maintains that the ALJ did not properly evaluate his credibility, "failed to consider relevant evidence and activities, and otherwise misconstrued Plaintiff's

activities and abilities." Pl. Mem. of Law at 29–30. Specifically, Plaintiff argues that,

through the use of "generalized examples or distorted instances," "[t]he ALJ seemed to

imply that [Plaintiff] was a drug seeking marijuana user . . . ." Pl. Mem. of Law at 30.

As the Second Circuit has stated,

> The regulations provide a two-step process for evaluating a claimant's
> assertions of pain and other limitations. At the first step, the ALJ must
> decide whether the claimant suffers from a medically determinable
> impairment that could reasonably be expected to produce the symptoms
> alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that
> subjective assertions of pain alone cannot ground a finding of disability. 20
> C.F.R. § 404.1529(a). If the claimant does suffer from such an impairment,
> at the second step, the ALJ must consider "the extent to which [the
> claimant's] symptoms can reasonably be accepted as consistent with the
> objective medical evidence and other evidence" of record. *Id*. The ALJ must
> consider "[s]tatements [the claimant] or others make about [his]
> impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or
> any other relevant statements [she] make[s] to medical sources during the
> course of examination or treatment, or to [the agency] during interviews, on
> applications, in letters, and in testimony in [its] administrative proceedings."
> 20 C.F.R. § 404.1512(b)(3); see also 20 C.F.R. § 404.1529(a); S.S.R. 96-
> 7.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "An individual's statement as to pain or

other symptoms shall not alone be conclusive evidence of disability . . . ." 42 U.S.C. §

423(d)(5)(A). Thus, the ALJ, "after weighing objective medical evidence, the claimant's

demeanor, and other indicia of credibility . . . may decide to discredit the claimant's

subjective estimation of the degree of impairment." *Tejada v. Apfel*, 167 F.3d 770, 776

(2d Cir. 1999).

The Court finds no error in the ALJ's treatment of Plaintiff's subjective complaints.

For the reasons stated above, the Court finds that the ALJ's determinations are supported

by substantial evidence, both objective and opinion. Moreover, the ALJ expressly

considered "other indicia of credibility" such as Plaintiff's failure to pursue "referrals that

might assist him with improving orthopedic functioning and decreasing pain," and his failure to act on medical advice that "smoking was aggravating his pain and delaying resolution of his symptoms." Tr. 44.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 13] is granted. The Clerk is respectfully directed to close this case.


DATED:      September 13, 2021
            Rochester, New York


_Charles J. Siragusa_
CHARLES J. SIRAGUSA
United States District Judge